# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF NEW YORK

---

JOVON McGLOUN,

                                      Petitioner,

      v.                                  9:22-CV-1000
                                                (DNH/MJK)

MARK PASSAGE,

                                      Respondent.

---

JOVON McGLOUN, Petitioner, pro se
JALINA J. HUDSON, AAG, for the Respondent

MITCHELL J. KATZ, U.S. Magistrate Judge

TO THE HONORABLE DAVID N. HURD:

## REPORT-RECOMMENDATION

      This matter has been referred to me for Report and Recommendation by the Honorable David N. Hurd, United States District Judge, pursuant to 28 U.S.C. § 636(b) and N.D.N.Y. Local Rule 72.3(c).  Petitioner, while incarcerated at Mid-State Correctional Facility,[1] filed this petition pursuant to 28 U.S.C. § 2254, challenging a March 5, 2018 judgment of conviction after an Onondaga County Court jury found him guilty of one count of murder in the second degree, and one count of criminal possession of a weapon in the second degree.  (Petition ("Pet.") at 1)[2] (Dkt. No. 1).  Petitioner was sentenced to serve a term of 25 years to life in state prison.  (*Id.*).

---

[1] Petitioner has since been transferred to Upstate Correctional Facility.  (Dkt. No. 23).

[2] Citations to the petition refer to the pagination generated by CM/ECF.

In his pro se federal habeas corpus application filed on September 19, 2022, Petitioner raises several arguments as grounds for relief.  (*See generally* Pet.). Respondent filed a response to the petition, together with the pertinent state court records and a memorandum of law.  (Dkt. Nos. 16, 17, 18).  For the following reasons, this court agrees with Respondent and will recommend denying the petition.

## I.    Relevant Facts

Respondent has included a detailed description of the facts and procedural history of this case.  (Respondent's Memorandum of Law ("Resp't MOL") at 3-18) (Dkt. No. 16).  This court will summarize the relevant facts as set forth in the state court record for clarity, and will discuss specific facts as necessary in the analysis of Petitioner's claims.

### A.    Pre-Trial Proceedings

On or about June 1, 2017, an Onondaga County grand jury indicted Petitioner on one count of murder in the second degree in violation of Section 125.25(1) of the Penal Law of the State of New York, and one count of criminal possession of a weapon in the second degree in violation of Section 265.03(3) of the Penal Law of the State of New York. (State Record ("SR.") at 48) (Dkt. Nos. 18-1, 18-2, 18-3).  He was arraigned in Onondaga County Court before the Honorable Thomas J. Miller on June 6, 2017, at which time he appeared with appointed defense counsel, Ralph Cognetti.  (6/6/17 Arraignment at 1-5) (Dkt. No. 18-4).

The parties appeared in court on January 16, 2018 to discuss the status of plea negotiations in advance of the January 29th trial date.  (1/16/18 Pre-Trial Conference ("PT.")) (Dkt. No. 18-9).  At the hearing, Petitioner informed the court that he wanted a new attorney because Mr. Cognetti had conducted a hearing on his motion to suppress

the identification procedures without Petitioner being "present." (PT. at 5). Petitioner also complained that "my attorney also told me last night that he – in his mind he feel that I'm guilty." (*Id.*). The court informed Petitioner that his attorney had not conducted a suppression hearing without him, but that counsel had submitted a letter to the court withdrawing the motion for strategic reasons. (*Id.*). The court asked Petitioner to speak with Mr. Cognetti during a break. (PT. at 5-6). After the break, Mr. Cognetti and the Petitioner indicated that the parties would proceed with a suppression hearing the following week, per Petitioner's request. (PT. at 6-7). The court then asked Petitioner if he was "comfortable continuing with Mr. Cognetti" as counsel, to which Petitioner responded "For now, yes." (PT. at 8). The court asked, "is that a yes," and Petitioner confirmed, "yes sir." (*Id.*).

The parties appeared for the suppression hearing on January 23, 2018. (1/23/18 Suppression Hearing ("SH.")) (Dkt. No. 18-10). The court began by informing the parties that Petitioner had submitted a 1/18/18 letter expressing his desire to change counsel. (SH. at 2). Petitioner elaborated, stating that counsel was "telling me that he feel I'm guilty, I'm guilty, and I feel that he's not – if he's telling me that, he's not going to put his all into my trial." (SH. at 3). Petitioner also complained that he was "not even fully prepared for trial" because he did not receive everything he needed from his attorney, and that he "didn't get to have a full suppression" hearing. (SH. at 4). Petitioner indicated that he would represent himself if the court did not appoint a new attorney. (SH. at 6-7).

The court advised Petitioner that the parties were in court to conduct the suppression hearing that day, and otherwise observed that defense counsel, in the court's opinion, was an "excellent attorney." (SH. at 5-8). After a break, the court

3

informed Petitioner that there was no basis to assign him new counsel, and that the suppression hearing would proceed that day. (SH. at 8-9). The court then conducted an extensive colloquy to determine whether it was in Petitioner's best interest to represent himself. (SH. at 10). In the middle of the colloquy, Petitioner asked to speak with his attorney. (SH. at 10-15). After speaking privately with Mr. Cognetti, Petitioner informed the court that he wanted to proceed with Mr. Cognetti as counsel, and apologized for "going back and forth about the situation." (SH. at 16). Petitioner further confirmed that he was "satisfied with Mr. Cognetti's services," and that he wished to proceed with his attorney. (SH. at 16-17). The court proceeded to conduct the hearing as scheduled (SH. at 17-43), ultimately denying suppression (SR. at 53-59).

## B.    The Trial

A four-day jury trial was held in Onondaga County before Judge Miller, commencing on January 29, 2018. (Trial ("T.")) (Dkt. Nos. 18-11, 18-12, 18-13, 18-14). The prosecution established, through witness testimony and documentary/video evidence, that on April 16, 2017, Petitioner asked an acquaintance for a ride in his car. At Petitioner's request, the driver stopped the vehicle near an intersection in the City of Syracuse, New York, and Petitioner exited the car. As Petitioner walked away from the vehicle, he came upon a group of people walking down the street, one of which was the victim. Petitioner proceeded to walk past the group, turn around, and shoot the victim with a silver handgun. Petitioner fled from the scene. He was eventually identified by witnesses to the incident, and arrested by law enforcement. Testimony from a "jailhouse informant" led to the handgun's subsequent recovery from between a "partial cinderblock wall" and another building, in the general geographic vicinity of where the shooting occurred. (*See generally* T. at 1-468).

4

Petitioner did not testify on his own behalf, and defense counsel did not call any witnesses. On cross-examination, defense counsel established that many of the eye-witnesses had not observed the entire sequence of events leading up to, including, and following the subject shooting. Defense counsel further attacked the credibility of the jailhouse informant. (*See generally* T. at 1-468).

The jury convicted plaintiff of all charges. (T. at 465-68).

### C.    Sentencing

A sentencing hearing was held on March 5, 2018. (Sentencing ("S.")) (Dkt. No. 18-15). The victim's parents testified about the impact the death of their son had on their lives, and the prosecutor asked the court to impose the maximum sentence of 25 years to life. (S. at 4-8). Defense counsel asked the court to impose a sentence less than the maximum term, noting various mitigating factors on behalf of Petitioner. (S. at 8-9).

Petitioner then informed the court of his request to adjourn sentencing for "numerous reasons." (S. at 9). First, Petitioner stated that he intended to marry his fiancée. (*Id.*). Second, Petitioner claimed that he was preparing a motion to challenge the verdict under New York Criminal Procedure Law ("C.P.L.") § 330.30 on the grounds of ineffective assistance of counsel. (*Id.*). Petitioner alleged that defense counsel had failed to investigate his alibi, and that Petitioner had never received information material to his defense from his attorney. (S. at 10-11). Petitioner requested a new attorney for the sentencing proceeding. (*Id.*).

The court did not adjourn sentencing, and noted that defense counsel "did everything that any attorney could do given the overwhelming proof against" Petitioner. (S. at 13). The court sentenced Petitioner to the maximum term of 25 years to life in

5

prison for the charge of second-degree murder, and a determinate term of 15 years in prison, followed by 5 years of post-release supervision, for the charge of second-degree criminal possession of a weapon.  (S. at 14).  The court imposed the sentences concurrently, because the law did not permit the court to impose them consecutively. (S. at 15).

### D.    Direct Appeal

Petitioner filed a counseled brief in the Appellate Division, Fourth Department. (SR. at 1-39).  The Appellate Division affirmed the judgment of conviction on July 16, 2021.  *People v. McGloun*, 196 A.D.3d 1118 (4th Dep't 2021) (SR. at 196-97). Petitioner filed a counseled application for leave to appeal to the New York Court of Appeals, which was denied on September 14, 2021.  *People v. McGloun,* 37 N.Y.3d 1028 (2021) (SR. at 208).

## II.    <u>Generally Applicable Law</u>

### A.    Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA")

The AEDPA provides that, when a state court has adjudicated the merits of a Petitioner's constitutional claim, a federal court may grant an application for a writ of habeas corpus only if "the adjudication of the claim (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d).  *See also, e.g.*, *Noble v. Kelly*, 246 F.3d 93, 98 (2d Cir. 2001); *Brown v. Alexander*, 543 F.3d 94, 100 (2d Cir. 2008).  This is a "difficult to meet," and "highly deferential standard for evaluating

state-court rulings, which demands that state court decisions be given the benefit of the doubt." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (citations omitted).

To determine whether a state-court decision is contrary to clearly established Supreme Court precedent, the federal court must consider whether the state court decision "'applies a rule that contradicts [such] law' and how the decision 'confronts [the] set of facts' that were before the state court." *Id*. at 182 (quoting *Williams v. Taylor*, 529 U.S. 362, 406 (2000)) (alterations in original). A state court decision involves an unreasonable application of clearly established Supreme Court precedent if it correctly identifies the governing legal principle, but unreasonably applies, or unreasonably refuses to extend that principle to the facts of a particular case. *See Williams*, 529 U.S. at 413; *Ramdass v. Angelone*, 530 U.S. 156, 166 (2000).

Under the AEDPA, a state court's factual findings are presumed correct, unless that presumption is rebutted by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). If the state court failed to decide a claim "on the merits," the pre-AEDPA standard of review applies, and both questions of law and mixed questions of law and fact are reviewed *de novo. Washington v. Shriver*, 255 F.3d 45, 55 (2d Cir. 2001). Finally, the Supreme Court has held that circuit and district court decisions do not constitute "clearly established Federal Law, as determined by the Supreme Court." *Parker v. Matthews*, 567 U.S. 37, 40 (2012). Instead, circuit court decisions may illustrate the "possibility" of fairminded disagreement, sufficient to justify denying the writ. *White v. Woodall*, 572 U.S. 415, 422 n.3 (2014).

### B.    Exhaustion

"Before seeking a federal writ of habeas corpus, a state prisoner must exhaust available state remedies, . . . thereby giving the State the opportunity to pass upon and

7

correct alleged violations of its prisoners' federal rights." *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (citing *Duncan v. Henry*, 513 U.S. 364, 365 (1995) (internal quotation and other citations omitted)); 28 U.S.C. § 2254(b)(1). The prisoner must "fairly present" his claim in each appropriate state court, including the highest court with powers of discretionary review, thereby alerting that court to the federal nature of the claim. *Id.*; *Bossett v. Walker*, 41 F.3d 825, 828 (2d Cir. 1994).

"A habeas Petitioner has a number of ways to fairly present a claim in state court without citing 'chapter and verse' of the Constitution, including '(a) reliance on pertinent federal cases employing constitutional analysis, (b) reliance on state cases employing constitutional analysis in like fact situations, (c) assertion of the claim in terms so particular as to call to mind a specific right protected by the Constitution, and (d) allegation of a pattern of facts that is well within the mainstream of constitutional litigation.'" *Hernandez v. Conway*, 485 F. Supp. 2d 266, 273 (W.D.N.Y. 2007) (quoting *Daye v. Attorney General*, 696 F.2d 186, 194 (2d Cir. 1982)).

Where a Petitioner has failed to exhaust his claims, but he cannot return to state court, Petitioner's claims are then "deemed" exhausted, but barred by procedural default. *Bossett v. Walker*, 41 F.3d 825, 828-29 (2d Cir. 1994). The merits of such a procedurally defaulted claim may not be reviewed by a federal court unless the Petitioner can show both cause for the default and actual prejudice resulting from the alleged violation of federal law, or if he can show that the constitutional violation has resulted in the conviction of one who is "actually innocent." *Rivas v. Fischer*, 687 F.3d 514, 540 (2d Cir. 2012); *Clark v. Perez*, 510 F.3d 382, 393 (2d Cir. 2008) (internal quotation and citations omitted). The actual innocence prong is referred to as the fundamental miscarriage of justice exception. *Rivas, supra*. "Cause" exists if "the

prisoner can show that some objective factor external to the defense impeded counsel's effort to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986). Prejudice exists if there is a "reasonable probability" that the result of the proceeding would have been different absent the alleged constitutional violation. *Strickler v. Greene*, 527 U.S. 263, 289 (1999).

### C. Adequate and Independent State Ground Doctrine

A federal judge may not issue a writ of habeas corpus if an adequate and independent state-law ground justifies the prisoner's detention, regardless of the federal claim. *See Wainwright v. Sykes*, 433 U.S. 72, 81-85 (1977). A federal habeas court generally will not consider a federal issue if the last state court decision to address the issue "'rests on a state law ground that is independent of the federal question and adequate to support the judgment.'" *Garvey v. Duncan*, 485 F.3d 709, 713 (2d Cir. 2007) (quoting *Lee v. Kemna*, 534 U.S. 362, 375 (2002)) (emphasis added). This rule applies whether the independent state law ground is substantive or procedural. *Id.* When the independent and adequate state ground supporting a habeas Petitioner's custody is a state procedural default, additional concerns come into play. *Coleman v. Thompson*, 501 U.S. 722, 731 (1991); *see also Whitley v. Ercole*, 642 F.3d 278, 286 (2d Cir. 2011) (quoting *Garcia v. Lewis*, 188 F.3d 71, 76 (2d Cir. 1999) ("[P]rocedural default in the state court will . . . bar federal habeas review when the last state court rendering a judgment in the case clearly and expressly states that its judgment rests on a state procedural bar.") (internal quotation marks omitted)).

There are certain situations in which the state law basis for decision will not be considered "adequate": (1) where failure to consider a prisoner's claims will result in a

"fundamental miscarriage of justice," *Coleman*, 501 U.S. at 750; (2) where the state procedural rule was not "'firmly established and regularly followed,'" *Ford v. Georgia*, 498 U.S. 411, 423-24 (1991); *James v. Kentucky*, 466 U.S. 341, 348-349 (1984); and (3) where the prisoner had "cause" for not following the state procedural rule and was "prejudice[d]" by not having done so. *Wainwright v. Sykes*, 433 U.S. at 87. In certain limited circumstances, even firmly established and regularly followed rules will not prevent federal habeas review if the application of that rule in a particular case would be considered "exorbitant." *Garvey v. Duncan*, 485 F.3d at 713-14 (quoting *Lee v. Kemna*, 534 U.S. at 376).

In order to find that the application of a generally sound rule is exorbitant, the court considers (1) whether the alleged procedural violation was actually relied upon by the state court and whether perfect compliance with the state rule would have changed the court's decision; (2) whether state caselaw indicated that compliance with the rule was demanded in the specific circumstances presented; and (3) whether Petitioner "substantially complied" with the rule given the realities of trial and whether demanding perfect compliance with the rule would serve a legitimate governmental interest. *Cotto v. Herbert*, 331 F.3d 217, 240 (2d Cir. 2003).

## DISCUSSION

Petitioner's claims seeking habeas relief are grounded in his Sixth Amendment rights to a fair trial and the effective assistance of counsel. Specifically, Petitioner claims that his rights were violated to the extent that defense counsel had a conflict of interest, which arose from counsel's statement before trial suggesting, to Petitioner, that counsel believed Petitioner was guilty. (Pet. at 6-7, 11, 13-14). Petitioner also claims

that the trial court improperly refused Petitioner's requests for a new attorney both before trial and at sentencing.  (Pet. at 6-7, 11).  Petitioner further claims that the trial court improperly denied him his right to self-representation.  (Pet. at 6-7).  Finally, Petitioner contends that he was denied the effective assistance of trial counsel due to counsel's "prejudice" and "bias," as well as counsel's failure to object to the prosecutor's summation.  (Pet. at 11-12).

### III.    Pre-Trial Request for New Counsel/Self Representation

Petitioner's claim that the trial court erred in denying his pre-trial request for new counsel, or to allow him to represent himself, is procedurally barred because the state court's decision addressing this issue disposed of it based on an adequate and independent state rule.  On appeal, the Appellate Division determined that Petitioner abandoned these requests by subsequently, " 'repeatedly stat[ing] . . . that he was ready to proceed to trial with [existing] counsel.' "  *McGloun*, 196 A.D.3d at 1119 (citations omitted).  Thus, the Appellate Division concluded, Petitioner's "contention that County Court erred in denying his pretrial request for a new attorney is . . . waived."  *Id.* (citations omitted).  This is consistent with the record before this court, indicating that Petitioner stated he was satisfied with counsel's representation and no longer wished to represent himself immediately before trial.  (SH. at 16).

"New York's doctrine of abandonment constitutes a procedural bar to addressing Petitioner's constitutional claim on federal habeas corpus review."  *Barill v. Artus*, 511 F. Supp. 3d 394, 412 (W.D.N.Y. 2020) (quoting *Miller v. Warden of Sing Sing Corr. Facility*, No. 13-CV-4576, 2018 WL 3518503, at *1-2 (E.D.N.Y. July 20, 2018) (where

11

Petitioner claimed that the trial court never resolved his pro se motion for appointment of new counsel, but after filing his motion, proceeded to trial with his original counsel, Appellate Division's holding that Petitioner had abandoned his Sixth Amendment claim "constitue[d] an independent and adequate state court ground that is firmly established and regularly followed."), *aff'd*, 803 F. App'x 493 (2d Cir. 2020); *Dukes v. Graham*, No. 16-CV-0918, 2020 WL 10897194, at *8 (W.D.N.Y. Apr. 28, 2020), *report and recommendation adopted*, 2021 WL 3851982 (W.D.N.Y. Aug. 27, 2021) (appellate court's reliance on Petitioner's waiver to deny his claim that trial court improperly denied request to replace attorney was an adequate and independent state law ground precluding habeas review) (citing inter alia *Goodwine v. Lee*, 10 Civ. 6019, 2016 WL 6840478, at *23 (S.D.N.Y. Feb. 10, 2016), *report and recommendation adopted as modified*, 2016 WL 6834017 (S.D.N.Y. Nov. 17, 2016).

Despite Petitioner's abandonment of his claim, the court may reach the merits if he "can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Scott v. Graham*, No. 16-CV-2372, 2017 WL 2820061, at *7 (S.D.N.Y. June 29, 2017) (internal quotation marks and citation omitted), *report-recommendation adopted*, 2018 WL 5257613 (S.D.N.Y. Oct. 22, 2018). "Cause may be demonstrated with 'a showing that the factual or legal basis for a claim was not reasonably available to counsel, . . . or that 'some interference by state officials made compliance impracticable, . . . [or that] the procedural default is the result of ineffective assistance of counsel.' " *Id.* (quoting *Murray v. Carrier*, 477 U.S.

12

478, 488 (1986)) (alterations in original). A "miscarriage of justice . . . is demonstrated in extraordinary cases, such as where a constitutional violation results in the conviction of someone who is actually innocent." *Miller*, 2018 WL 3518503, at *2. Petitioner has not demonstrated any cause for his default, nor has he shown that it resulted in a miscarriage of justice.  The court therefore recommends dismissal of the petition on this basis, due to plaintiff's procedural default.

## IV.    Ineffective Assistance of Counsel

To the extent Petitioner claims that counsel's (1) purported conflict of interest, (2) failure to object to the prosecution's summation, and (3) litigation of the suppression hearing without Petitioner present amounted to ineffective assistance of counsel, these allegations do not rise to the level of constitutional violations that would be redressable on habeas review.

The relevant federal law governing ineffective assistance of counsel claims was set forth by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984).  To succeed on a claim of ineffective assistance of counsel, a defendant must satisfy the two-pronged test set forth in *Strickland*.  First, the defendant must show that counsel's performance was deficient.  "This requires showing that counsel made errors so serious that counsel was not functioning as the counsel guaranteed the defendant by the Sixth amendment."  *Hudson v. New York*, No. 07-CV-1327, 2007 WL 3231970, at *2-3 (E.D.N.Y. Oct. 30, 2007) (citing *Strickland v. Washington*, 466 U.S. at 687).  Under this prong, "[j]udicial scrutiny of counsel's performance must be highly deferential . . . a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the

13

presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Strickland v. Washington*, 466 U.S. at 689 (internal quotation marks and citations omitted).

Second, the defendant must satisfy the prejudice prong set forth in *Strickland* by showing that any deficiencies in counsel's performance actually prejudiced the defendant. *Id.* at 692-93. To establish prejudice, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome. In making the determination whether the specific errors resulted in the required prejudice, a court should presume, absent challenge to the judgment on grounds of evidentiary insufficiency, that the judge or jury acted according to law." *Id.* at 694.

> Upon review of a habeas petition claiming ineffective assistance of counsel,
>
> [t]he pivotal question is whether the state court's application of the *Strickland* standard was unreasonable. This is different from asking whether defense counsel's performance fell below *Strickland's* standard. Were that the inquiry, the analysis would be no different than if, for example, [the district court] were adjudicating a *Strickland* claim on direct review of a criminal conviction[.]

*Paige v. Lee*, 99 F. Supp. 3d 340, 345 (E.D.N.Y. 2015) (quoting *Harrington v. Richter*, 562 U.S. 86 (2011)). Therefore, to the extent a habeas Petitioner must show both that counsel's performance was unreasonable and that the state court's decision to the contrary was unreasonable, a "doubly deferential" standard of judicial review applies to ineffective assistance of counsel claims analyzed under 28 U.S.C. § 2254(d)(1). *Santana v. Capra*, 284 F. Supp. 3d 525, 538 (S.D.N.Y. 2018) (citing *Knowles v. Mirzayance*, 556 U.S. 111 (2009)).

14

In this case, the Appellate Division considered plaintiff's claims concerning the ineffective assistance of defense counsel, and found them without merit. Specifically, the Appellate Division held that "to the extent reviewable on direct appeal, [Petitioner's] ineffective assistance of counsel claim is without merit." *McGloun*, 196 A.D.3d at 1119 (citing inter alia *People v. Linder*, 170 A.D.3d 1555, 1559-1560 (4th Dep't 2019)). In *Linder*, the Appellate Division held that counsel was not ineffective for failing to object to comments during summation if the objection would have been unavailing, and that the summation remark at issue was not "sufficiently egregious to deprive defendant of a fair trial; as such, it cannot be said that defense counsel was ineffective for failing to object to that comment." 170 A.D.3d at 1560.

The court addresses each of Petitioner's ineffective assistance of counsel claims in turn.

### A.     Litigating the Suppression Hearing Without Petitioner Present

Petitioner's claim that counsel was ineffective for litigating the suppression hearing without him merits little discussion. The record makes clear that Petitioner was, in fact, present for the suppression hearing that took place on January 23, 2018. (SH. at 1-43). Thus, because Petitioner has in no way identified a deficiency in counsel's representation, he is not entitled to habeas relief on this basis. *See Jenkins v. Dolce*, No. 14-CV-6977, 2015 WL 5732097, at *4 (E.D.N.Y. Sept. 28, 2015) ("Because Petitioner has failed to meet the first prong under *Strickland*, the Court need not engage in analysis of the second prong under Strickland.") (quoting S*trickland*, 466 U.S. at 697 ("[T]here is no reason for a court deciding an ineffective assistance claim to . . . address both components of the inquiry if the [Petitioner] makes an insufficient showing on one.")).

15

## B.    Conflict of Interest

Petitioner also asserts that counsel's "conflict of interest" – his communication to Petitioner that there was strong evidence of Petitioner's guilt – rendered him ineffective. Assuming that the merits of this claim are properly before this court on habeas review, and that counsel did make the off-the-record comments suggested by Petitioner concerning his likelihood of conviction,[3] Petitioner's allegations are nevertheless meritless because they do not establish any deficiency by counsel in his representation. On the contrary, as the trial court advised plaintiff, it was counsel's duty to inform Petitioner of the strengths and weaknesses of the prosecution's case, especially in the context of communicating formal offers from the prosecution to accept a plea. *Smalls v. LaManna*, No. 19-CV-1818, 2023 WL 3435000, at *11 (E.D.N.Y. May 12, 2023) ("An attorney 'should usually inform the defendant of the strengths and weaknesses of the case against him, as well as the alternative sentences to which he will most likely be exposed.' ") (quoting *Purdy v. United States*, 208 F.3d 41, 44 (2d Cir. 2000)); *Gregory*

---

[3] As the Appellate Division alluded to in its decision, Petitioner's ineffective assistance of counsel claim concerning off-the-record comments made by counsel, which purportedly suggested a conflict of interest to the Petitioner, were more appropriately the subject of a § 440.10 motion. Under New York law, when a claim of ineffective assistance of counsel is based upon facts that occurred outside the trial record, the claim must be made on collateral attack via a CPL § 440.10 motion, and not upon direct appeal. *Hansen v. Johnson*, No. 21-CV-00409, 2023 WL 4274273, at *6 (E.D.N.Y. June 29, 2023) (citing inter alia *Pierotti v. Walsh*, 834 F.3d 171, 178 (2d Cir. 2016)). There is nothing in the record to suggest that Petitioner has filed a Section 440.10 motion, thus, his claim is unexhausted and could still be brought in a §440.10 motion, because there is no time limit or number cap on said requests for relief. *See e.g., Mosley v. Rich*, No. 9:18-CV-0428, 2020 WL 3128530, at *12 (N.D.N.Y. June 12, 2020) (explaining if a Petitioner's unexhausted claims "are based on evidence outside the record, however, they could still be brought in a motion to vacate judgment under CPL § 440.10 because there is no time limit or number cap on § 440.10 motions"). However, "[a]n application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(2). This is particularly true where the claim is plainly meritless. *See Rhines v. Weber*, 544 U.S. 269, 277 (2005).

*v. United States*, 248 F. Supp. 2d 86, 93 (D. Conn. 2003) ("A finding of constitutionally ineffective assistance of counsel is certainly not warranted by the fact that Mr. LaBelle informed his client that he believed that the government had a strong case against him, making a guilty plea a viable option. Such candid advice is what an attorney should give his client.").  If counsel had *failed* to explain to Petitioner the exposure he faced upon a guilty verdict "and the demonstrable weaknesses in the defense case, [he may have been found to be] derelict in his duties under *Strickland* and the Sixth Amendment."  *Martin v. Conway*, 764 F. Supp. 2d 545, 551 (W.D.N.Y. 2011). Petitioner does not otherwise specify how counsel's belief that there was strong evidence of Petitioner's guilt was manifested in counsel's conduct before, during, or after his trial, such that it implicated his defense.  Because Petitioner has failed to identify any deficiency by counsel in this regard, his claim is meritless.  Accordingly, the claim should be dismissed regardless of the extent Petitioner failed to exhaust it in state court.  *See* 28 U.S.C. § 2254(b)(2).

### C.    Failure to Object to Summation

As part of his summation, in addition to reviewing the video surveillance with the jury and summarizing the testimony of the witnesses, the prosecutor also asked the jury to consider "the fact that not every witness will share your life experiences.  Not every witness will have your educational background." (T. at 411). The prosecutor went on to reference a song he heard on the radio, the lyrics of which, he suggested, encouraged the public's noncompliance with the judicial system.  (*Id.*).  The prosecutor then asked the jury to consider, if such lyrics were on the radio broadcast "all over Onondaga County," what it was "really like" for the witnesses who did show up to court to testify

against Petitioner, and "what effect . . . that dynamic ha[s] on what you saw in this courtroom[.]"  (*Id.*).

Petitioner makes no specific objection to the prosecutor's summation, nor does he articulate what statements should have been objected to by counsel.  Nevertheless, the court has reviewed the entire summation, and concludes that the Appellate Division reasonably determined that counsel was not deficient for failing to make what were likely meritless objections.  Even if the prosecutor had overstepped with his pop culture reference, which this court suspects he did not, counsel's decision not to object to a closing argument is frequently a question of strategy – a competent defense lawyer may choose not to object to avoid drawing attention to a particular inflammatory remark. *See Broxmeyer v. United States*, 661 F. App'x 744, 748 (2d Cir. 2016) ("As we have explained, ". . . decisions such as when to object and on what grounds are primarily matters of trial strategy and tactics, and thus are virtually unchallengeable absent exceptional grounds for doing so.")(quoting *United States v. Cohen*, 427 F.3d 164, 170 (2d Cir. 2005)).

Furthermore, "absent any prejudicial error in the [prosecutor's] summation, the failure here to raise an otherwise futile objection could not have rendered counsel ineffective." *Id.* (quoting *Cohen*, 427 F.3d at 170).  Petitioner has not identified any prejudice he sustained from the prosecutor's closing remarks, much less any egregious comments toward which an objection would have been appropriate.  Because Petitioner has not shown that his counsel's performance was objectively unreasonable or caused him prejudice, the Appellate Division's rejection of Petitioner's ineffective assistance of counsel claim was not "contrary to" or "an unreasonable application of" *Strickland.* 28 U.S.C. § 2254(d)(2). Thus, the court recommends dismissal of the petition on this basis.

**V.**    <u>**Request for New Counsel at Sentencing**</u>

Petitioner contends that the trial court erred in denying his request for a new attorney at sentencing.  As previously set forth, prior to sentencing Petitioner submitted a letter to the court requesting an adjournment of the proceeding.  (S. at 2-3).  Petitioner reiterated his request for an adjournment of his sentencing at the scheduled proceeding itself, listing "numerous reasons" for the request.  (S. at 9).  Petitioner then explained that he was "in the process of trying to get married to [his] fiancée."  (*Id.*).  His "second reason" for requesting an adjournment was that he was "in the process of drafting a 330.30 motion on ineffective assistance of trial counsel," based on counsel's purported failure to investigate Petitioner's alibi defense. (S. at 9-10).  Petitioner, still professing his innocence, maintained that he had not received discovery material and/or copies of court transcripts from his attorney, which he required prior to the court rendering a sentence. (S. at 10-11).  He also stated that counsel just "kept telling" Petitioner that the "person in the videotape was" him, and that Petitioner needed to plead guilty.  (S. at 11).  The court denied Petitioner's request for new counsel, stating that it was clear to the court and jury that Petitioner shot the victim in the back, and that counsel "did everything that any attorney could do given the overwhelming proof against [him]."  (S. at 13).

On appeal, the Appellate Division "reject[ed] defendant's . . . contention that the court erred in denying his request for a new attorney at sentencing." *McGloun*, 196 A.D.3d at 1119.  Petitioner has failed to demonstrate that this was contrary to, or an unreasonable application of, federal law.  The Second Circuit has explained that a criminal defendant's belated request to substitute appointed counsel on the eve of or during trial requires a showing of "good cause, such as a conflict of interest, a complete

breakdown of communication or an irreconcilable conflict which leads to an apparently unjust verdict." *McKee v. Harris*, 649 F.2d 927, 931 (2d Cir. 1981); *see also Latterell v. Conway*, 430 F. Supp. 2d 116, 123 (W.D.N.Y. 2006). These "restraints must be put on the reassignment of counsel lest the right be manipulated so as to obstruct the orderly procedure in the courts or to interfere with the fair administration of justice." *McKee*, 649 F.2d at 931 (internal citations omitted).

Here, Petitioner has not advanced any good cause for which the trial court should have granted his request for new counsel at sentencing. As addressed above, there was no conflict of interest between Petitioner and his counsel. Moreover, as set forth above Petitioner's record-based ineffective assistance of counsel claims were meritless, and thus could not have succeeded on a § 330.30 motion. If Petitioner had wanted to raise an ineffective assistance of counsel claim based on facts outside the record, such as counsel's alleged failure to investigate his alibi, the proper mechanism would have been a motion to vacate the judgment pursuant to § 440.10. Petitioner did not file such a post-conviction motion, nor has he presented any evidence to this court that he had a viable alibi defense that counsel overlooked, or declined to pursue for reasons other than trial strategy.[4] Otherwise, the record establishes that counsel actively argued for leniency in the court's sentencing of Petitioner. (S. at 8-9). Accordingly, the Appellate

---

[4] "The decision not to call a particular witness is typically a question of trial strategy that appellate courts are ill-suited to second-guess." *United States v. Luciano*, 158 F.3d 655, 660 (2d Cir. 1998). Thus, "whether to call specific witnesses - even ones that might offer exculpatory evidence - is ordinarily not viewed as a lapse in professional representation." *United States v. Best*, 219 F.3d 192, 201 (2d Cir. 2000). A Petitioner "does not show that he was prejudiced by trial counsel's failure to call witnesses merely by asserting that they might have supplied relevant testimony; rather, he must state exactly what testimony they would have supplied and how such testimony would have changed the result." *Carr v. Senkowski*, No. 01-CV-689, 2007 WL 3124624, at *20 (W.D.N.Y. Oct. 23, 2007) (citing, inter alia, *Alexander v. McCotter*, 775 F.2d 595, 602 (5th Cir. 1985)).

Division reasonably determined that the trial court did not err in denying his request for new counsel at sentencing, and the petition should be dismissed on this basis. *See Jackson v. Comm'n of New York State Dep't of Correction & Cmty. Supervision*, No. 18-CV-00270, 2023 WL 2435754, at *1 (E.D.N.Y. Feb. 3, 2023) (denying habeas relief on basis that trial court denied Petitioner's application for new counsel at sentencing where "Petitioner has not pointed to a single error by counsel in the sentencing phase of his case, or explained how such an error was caused by [a] supposed conflict of interest, or demonstrated that he was prejudiced by the purported error.").

**WHEREFORE**, based on the findings above, it is

**RECOMMENDED**, that the petition (Dkt. No. 1) be **DENIED and DISMISSED**, and it is

**RECOMMENDED**, that a certificate of appealability be **DENIED**.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen (14) days within which to file written objections to the foregoing report.  These objections shall be filed with the Clerk of the Court.  **<u>FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.</u>**  *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of HHS*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.


Dated: April 12, 2024

Mitchell J. Katz
U.S. Magistrate Judge